Julio Carasquillo-Serrano, et al. v. Municipality of Canovas, excuse me, Cano-Vanas. Good morning, Judge Thompson, Judge Kayette, and Chief Judge Howard. May I please the court? Many thanks. This is a case that has been brought before the district court predicated under the Antala federal law and state courts law against the municipality among other parties. It is specifically alleged that the municipality is liable to the plaintiffs because of a violation of, alleged violation under Antala occurred. Is there any dispute that Attorney Gonzalez got sued, got served? Excuse me? Is there any dispute that Attorney Gonzalez, the municipality's attorney, got served? There is no controversy as to the fact that Attorney Gonzalez was served, but he's not the attorney for the municipality. He used to work. Excuse me? I'm sorry, I just wanted to explain. I understand. I read your brief. Okay. Why didn't he do something? We don't know. We don't know why he did not do a thing about this because the matter was never brought to the attention of the mayor's office. But nobody ever asked him? Excuse me? When it came to your attention that he had been served, no one asked him? He was not working at the municipality by the time the municipality became aware of his situation. Was he dead or otherwise unavailable for an answer? No, that we, I mean, we don't know the whereabouts of Mr. Gonzalez. I mean, by the time we, the municipality, became aware of this whole situation, Mr. Gonzalez was not even working at the municipality. His superior, who was the director of the legal office of the municipality, Attorney Felix Montañez, was also not working for the municipality. So how do we became aware or the municipality became aware of this case? The truth of the matter is that plaintiff for, I mean, attorney for plaintiff, counsel for plaintiff, plaintiff paid a visit to the municipality, talked to the mayor, and confronted the mayor with a judgment. And at that time, it was the moment when the municipality became aware of a judgment against the municipality in this case. So are you asking us to throw out the judgment based on failure to make service? That's one of the reasons. But stay with that for a second. Yes, sir. As I understand it, this lawyer was in-house counsel. He did have some role with respect to the municipality. He was an employee. Okay. So he's an employee. So he's potentially a logical designee of the mayor to accept service, perhaps, perhaps not. Did the municipality present any evidence that's in this record that that employee could not act on behalf of or wasn't the designee of the mayor for service or process? No. Honestly, Your Honor, there is no evidence by the municipality. Well, don't you have a problem then? Because if you've got prima facie service, doesn't that shift the burden to you to have shown this person wasn't authorized to receive service? Well, the municipality contends for the first time when we filed a motion to set aside the judgment that the proper person to be served by law is the mayor. That's the general rule. Or her designee. And we have stated that he was not a designated person by the mayor of our county. What evidence is there of that other than an assertion and a brief? There's only an assertion, and you're right, Your Honor. There's no evidence. We have not been able to produce or we have not produced evidence as to that matter. Or even an affidavit from the mayor saying that he wasn't her designee. It's not included, Your Honor. That's the truth. I mean, it's an assertion by the municipality in the motion stating that the mayor should have been served. Sorry, I didn't mean to interrupt you, Your Honor. At least proceed. So what is additionally very important in this case is the Entala matter because that is the way the gates of the district courts were open in this case to allow for what would be a regular court's gates under state law in a regular state court to be tried. We maintain that the, and this is the proposition of the municipality, that there is no Entala jurisdiction in this case because the municipality is not a participating hospital, as such term is defined under the Entala regulations. But isn't it the case that the district court has jurisdiction to decide whether Entala applies? Well, that matter was unresolved before the district court actually co-defendant SM Medical Services, who was at the time the operator of this CDT facility in Ken Alvarez, moved the court under those premises to dismiss the complaint. But the matter was left on abeyance and never resolved subsequently by the district court. But to me, that doesn't sound like no jurisdiction. Excuse me, Your Honor? It doesn't sound like there's no Article III jurisdiction. I mean, the court has the jurisdiction to decide whether the statute applies. But that never was resolved by the court. I mean, the matter was taken as granted by the court, and the court should have determined whether or not there was jurisdiction under Entala. Well, that's because of the default. That's because of the default. But nonetheless, the matter was brought, as I said, by another co-defendant before the court, specifically co-defendant SM Medical Services. The problem is that SM Medical Services filed for bankruptcy, and later on it was not necessary to deal with the issue. SM Medical Services Inc. was a private entity operating the CDT of Ken Alvarez. It was the entity that hired co-defendant Aviles, the doctor. The municipality did not hire Dr. Aviles. SM Medical Services was actually the employer of Dr. Aviles. I mean, the problem is that once you're in default, everything necessary to effectuate liability is conceded, and the only issue left for the court to determine after a properly entered default is damages. Well, the thing is that the complaint was amended, and another party was brought in. The insurance company. Subsequent to the entry of default. The insurance company. The insurance company, Your Honor. So that would have or has a possibility of affecting the distribution of liability amongst the defendants in this case, particularly as it eventually happened that SM Medical Services Inc. filed for bankruptcy. So if any chances the municipalities had to file a gross complaint against SM Medical Services, that possibility was gone. Why? Because of the bankruptcy. SM Medical Services, co-defendant SM Medical Services. So was this debt discharged? Yes. And what about the insurance company? The insurance company entered into an agreement with plaintiffs, and that agreement, we don't know any details or particulars about it. And as a result of that agreement, co-defendant Dr. Aviles and plaintiffs entered into an agreement, and the proceedings continued just against the municipality. What about the carrier for the in-house counsel, his insurance company? What about? Has the insurance company for the in-house counsel participated here? I don't believe he was or any particular employee of the municipality is under any employer's practice liability insurance in the municipality of Canova. As far as we know, we are not aware of any such insurance policy, Your Honor. So you think the municipality self-insures the attorneys working for the municipality? As far as I am concerned, the local attorneys, because they are not actively involved or practicing law, they are just managing administrative matters, they are not provided with employers or malpractice liability insurance. And you're saying that you don't, because the other insurance companies settled, that you don't have a right of contribution from them? Well, in theory, we would. I mean, the municipality would, but contribution in this case would have been almost impossible to say, to put it in practical terms, and the reason why is that the operator of this facility, the private entity that was managing this facility at the time, SM Medical Services, Inc., filed for bankruptcy. I'm talking about the insurance company. Whose insurance company? SM's. Oh, well, that's another story. We did not know whether or not, whose medical insurance company was, had provided insurance policy to or in favor of SM Medical Services, Inc. And secondly, it would have been also next to impossible obtaining any kind of redress from the doctor himself, because, I mean, this is a multimillion type of case. So in practical terms, filing a suit against the doctor after he has already most probably exhausted his insurance policy, he would have filed for bankruptcy himself. Do you have any other questions? Not right now. Okay. So the other thing that is important to keep in mind in this case besides the EMTALA allegation or the lack of jurisdiction under EMTALA is the fact that in this case, plaintiffs had a duty to notify the municipality in advance. There is a 90-day requirement after the date of the events that lead to the filing of the complaint, the alleged damages. Under local law, Article 15.003 of the Autonomous Municipalities Act, advance notice had to be given to the municipality at least with 90 days. There are several exceptions to that requirement, particularly the one that calls for, that allows for the filing of the complaint and the serving of process within the 90-day period. But that was not the case in this particular instance. Actually, the complaint was filed almost a year after the relevant events took place. Plaintiffs maintain or allege that Plaintiff Carrasquillo was not capable of performing this advance notice and that actually their plaintiff's children also are not subject to such a requirement. However, truth of the matter is that plaintiff's wife, Mrs. Diaz, she did not file such a notice on her behalf, not even on her husband's behalf and on their children's behalf. So we maintain that the plaintiffs had a duty to comply with the advance notice requirement. They did not comply with that. That is an admitted fact and they have not excused their not so noticing the municipality in advance of the filing of this requirement. In any event, if let's say Mr. Carrasquillo is excused or the children are also excused, at least Mrs. Diaz is not excused because she as a plaintiff had a duty herself to file her own notice. What do you say to the argument that the notice requirement, failure to comply with notice, that you're right, they have to file notice, but that's an affirmative defense that has to be raised by a defender? It is an affirmative defense. The municipality was allegedly served initially with the initial complaint, but the municipality was not given notice of the amended complaint and the municipality maintains that that amended complaint, where a new additional body was brought in, had to be noticed to the municipality. So at least at that time an opportunity would have been allowed to the municipality to appear and file its allegations and affirmative defenses. Moreover, we also maintain that the request for the entry of default, the motion for entry of default, that plaintiff filed in this case would have been easily filed or tendered to the municipality by mail as the notice of default itself would have been noticed to the municipality by mail as Rule 5 allows to. And that would have saved us a lot of headaches, Your Honor, honestly. I thought you didn't do that notice of default? Excuse me? You didn't get any notice of the default itself? No, Your Honor. We didn't receive any. The municipality didn't receive any notice whatsoever after, at any time. Not even the motion requesting the entry of default was mailed to the municipality. Thank you. Thank you. Good morning, Your Honors. David Efron for Appellee. May it please the Court. So our process server takes a copy of the complainant's summons to the mayor's office in Canovanas and is directed to go one door down and serve one of the in-house attorneys for the municipality. That's what's done in every municipality. Every time you sue a municipality, the mayor doesn't come out and greet the process server. They have a procedure. The in-house counsel takes that. So after that, they ignored the complaint for three years. And only after a jury verdict on damages, they show up in court and claim. When you filed an application for entry of default, did you send any kind of notice to the municipality? I'm not certain. Probably did, but I'm not certain. I can't be sure unless I have to see the record, but probably did. Probably did by mail only. We would not serve process again on that, but just by mail. Is there anything in the record that will help us answer that? I beg your pardon? Is there anything in the record that will help us answer that question? Maybe when the clerk of the court issued the default judgment, a notice was given to all the defendants as per their addresses. And in this case, it would have been the municipality's address on the subpoena, on the service of process subpoena. In the opinion that is being appealed here, the district court found it senseless to conclude that the municipality was not aware of the action against it. In this appeal, the municipality is now raising, number one, the 90-day notice requirement, which, as you correctly know and noted, is jurisdictional and was waived. Secondly, by the way, it probably is inapplicable anyway based on the way the Supreme Court of Puerto Rico has been applying it. But in any event, it's irrelevant because it was waived. Secondly, what we just argued, that the summons was not actually on the mayor, on the office, on the elected office holder, but on somebody designated to accept that service of process. Third one, third point on appeal is the limitation of liability cap. Again, it was waived. I agree with the court that the municipality could have still brought in for contribution either the bankrupt party or their insurance company. They did not do so. They dropped a position that they had at the court below to the point alleging that the municipal legislature did not allow, did not authorize the municipality to answer the complaint, which would mean that they had noticed. That would do away with at least a couple of their other points on appeal. So they dropped that point that the municipal legislature did not authorize anybody to answer the complaint, which would mean that they did have noticed. But they did add something they didn't raise below, which was the EMTALA issue. Whether the Canovas CDT or medical diagnostic center is not bound by EMTALA. That was not addressed by them in the court below, and certainly it was waived on appeal. Well, but they say they're pressing it as a matter of just no prayer of jurisdiction for the court. If it's beyond dispute that a court has subject matter jurisdiction, sometimes you can collaterally attack a judgment. So what do you say to the argument that your complaint just didn't even arguably invoke subject matter jurisdiction? The court below ruled on the EMTALA, not on the order that was appealed in this case, but on a prior order at the beginning of the case that was addressed, and there was no reason to argue that EMTALA would not be applicable here. This was clearly a patient dumping case where EMTALA would be, based on the facts, applicable. But the argument is that the statute only applies to hospitals that provide inpatient care, and it's when one of their emergency rooms, quote, unquote, dumps a patient, that's what the statute directs. And your complaint alleges that the defendant here provided outpatient care, not inpatient care. So what do you say to that? Well, an emergency room provides inpatient care. They might not have hospital beds to keep patients overnight, but when somebody comes into an emergency room and they get sent away, that constitutes a patient dumping situation under EMTALA. But you're saying there's the allegation in your complaint is that they provide outpatient care. They do. There's no allegation of any inpatient care? No. It doesn't the statute only apply to hospitals, which it then defines as medical facilities that provide inpatient care? It's distracting when you keep shaking your head back there. Thank you. Are you speaking to me? No, I was speaking to the other counsel. I'm sorry. Well, you know, we didn't even raise that on appeal because it was waived in our appellee's brief. This was clearly waived. It was not raised below. And to raise it for the first time on appeal, I don't see how this could prosper in any way. May I continue? Certainly. The District Court of Puerto Rico clearly had subject matter jurisdiction in this case. The court below ruled on that early in the case, and later in the case, it was not even raised. It was left alone. When you say the court ruled on it, and then in the next breath you say it wasn't raised, I'm trying to make sense. Early in the case, when we had the bankrupt defendant, the bankrupt defendant raised it, and I remember that there's an opinion early in the case by the district court addressing the Entala issue. That is not the opinion that's being appealed here. That was years ago, years before the final order that is what is being appealed here, which did not in any way raise Entala below. Basically, the municipality disregarded the jurisdiction of the court until it was too late for them to do anything about it. After the jury verdict, this should not be tolerated. The district court referred to this tactic as an unreasonable dilation. Because of these reasons, the district court judgment should be affirmed. Thank you very much, unless you have anything else. Thank you.